## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRAIN CDJ, LLC<br>　　　　　Appellant | )<br>)<br>) |
| vs. | )<br>)    **09-CV-08887-CM** |
| | )    Appeal from Bankruptcy |
| OLD CARCO, LLC | )    Case No. 09-B-50002 |
| *formerly known as Chrysler, LLC*; and | )  (Hon. Arthur J. Gonzales, presiding) |
| CHRYSLER GROUP, LLC | ) |
| *formerly known as* | ) |
| *New CarCo Acquisition, LLC* | ) |
| 　　　　　Appellees | ) |

## AMENDED AND SUBSTITUTED BRIEF OF APPELLANT CRAIN CDJ, LLC

Respectfully submitted:

*Davidson Law Firm, Ltd.*
724 Garland, Cantrell at State
Little Rock, AR 72201
(501) 374-9977
Telefax: (501) 374-5917
E-mail: skipd@dlf-ar.com
　　　　slg@dlf-ar.com
　　　　mattheww@dlf-ar.com

By: /s/ Matthew D. Wells
　　　Matthew D. Wells, *Pro Hac Vice*
　　　Stephen L. Gershner, *Pro Hac Vice*
　　　Charles D. Davidson, *Pro Hac Vice*

- and -

Donald M. Sunshine, 5281
*Sunshine Slott & Sunshine, PC*
150 W 25th St, #503
New York, NY 10001-7404
(212) 695-9112
Email: ssslaw@broadviewnet.net

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

**Table of Authorities** ...................................................................................... iii

**Basis for Appellate Jurisdiction** ................................................................ 1

**Statement of Issues and Standard of Review** ...................................... 2

Statement of Issues on Appeal ...................................................................... 2

The Standard of Review for all Issues Is *De Novo* ................................... 2

**Statement of the Case** ...................................................................................... 3

Nature of the Case ............................................................................................. 3

Important Definitions as Used in this Brief ................................................ 4

Course of the Proceedings and Disposition Below .................................. 6

Factual Background ........................................................................................... 8

    *The Bankruptcy Court States its Purpose for Rejecting
Crain* ................................................................................................................ 8

    *The Bankruptcy Court Comments on Preemption* ........................... 9

**Argument** ............................................................................................................ 10

The Bankruptcy Court Lacked Jurisdiction Over Crain's Objection
with the AMVC ................................................................................................ 10

Debtors Lack Standing to Challenge Crain's Objection with the
AMVC ................................................................................................................ 12

Neither the Rejection Order Nor the Sale Order Prohibit Crain's
Objection with the AMVC .............................................................................. 12

    *The Rejection Order Affected Only Debtors, but Had
No Effect on New Chrysler* ........................................................................ 13

    *The Sale Order Explicitly Excludes from the "Free and
Clear" Provisions Liabilities to Governmental Units
Under Police and Regulatory Statutes* ................................................. 14

CRAIN'S OBJECTION IS NOT A CLAIM
WITHIN THE MEANING OF 11 U.S.C. § 101(5) ................................. 15

CRAIN'S AMVC OBJECTION IS NOT A LIABILITY,
ENCUMBRANCE, RIGHT, REMEDY, RESTRICTION, OR
INTEREST ............................................................................................ 15

CRAIN'S AMVC OBJECTION IS AN OBLIGATION
CREATED BY NEW CHRYSLER ......................................................... 17

CRAIN'S AMVC OBJECTION IS AN OBLIGATION
SPECIFICALLY EXEMPTED BY PARAGRAPH 23 .................................. 17

New Chrysler's Duties to the Arkansas Motor Vehicle
Commission Are New Duties Arising from Its Own
Actions, and Are Not Successor Liabilities ................................... 19

The Overriding Intent of the Sale and Rejection
Orders, as well as Public Policy, Belie Debtors' and
New Chrysler's Enforcement Motion .............................................. 22

Conclusion .................................................................................................... 25

Signature ...................................................................................................... 26

Certificate of Service .................................................................................. 27

## TABLE OF AUTHORITIES

<u>CASES</u>

*Ades-Berg Investors v. Breeden (In re: Bennett Funding Group),*
439 F.3d 155 (2d Cir. 2006) ................................................................... 1

*Bellefonte Reins. Co. v. Aetna Cas. & Surety Co.,* 903 F.2d 910 (2d Cir. 1990) .................. 3

*Christmas v. Md. Racing Comm'n,* 102 B.R. 447(Bank. E.D.Md. 1989) ............................ 24

*Ford v. Bd. Of Managers of Cameo Townhouses at Massapequa,*
2009 U.S.Dist.LEXIS 13124 (E.D.N.Y. Feb. 18, 2009) ........................................ 2

*Horne v. Flores, ___ U.S. ___,* 129 S.Ct. 2579 (2009) ......................................... 12

*In re: Application of the New York Times Co. to Unseal Wiretap& Search*
*Warrant Materials,* 557 F.3d 401 (2d Cir. 2009) .............................................. 3

*In re: Austin Dev. Co.,* 19 F.3d 1077 (5th Cir. 1994) ......................................... 19

*In re: Chrystal Mfg. & Packaging, Inc.,* 60 B.R. 816 (Bank. N.D.Ill. 1986) ................... 11

*In re: Cousins Restaurants, Inc,* 11 B.R. 521 (Bank. W.D.N.Y. 1981)) ......................... 24

*In re: Drexel Burnham Lambert Group, Inc.,*
138 B.R. 687 (Bank. S.D.N.Y. 1992) ......................................................... 19

*In re: Duplan Corp.,* 212 F.3d 144 (2d Cir. 2000) ............................................ 3

*In re: Ernst & Young, Inc.,* 135 B.R. 517 (S.D. Ohio 1991) ................................... 1

*In re: Fedpak Sys.,* 80 F.3d 207 (7th Cir. 1996) ............................................. 11

*In re: Fintel,* 10 B.R. 50 (Bank. Dist.Or. 1981) ............................................ 24

*In re: Fugazy Express, Inc.,* 982 F.2d 769 (2d Cir. 1992) .................................... 1

*In re: Hooker Investments, Inc.,* 937 F.2d 833 (2d Cir. 1989) ................................ 1

*In re Lavigne,* 114 F.3d 379 (2d Cir. 1997) ................................................. 19

*In re: Lomas Financial Corp.,* 932 F.2d 147 (2d Cir. 1991) .................................. 1

*In re: Mitchell,* 249 B.R. 55 (Bank. S.D.N.Y. 2000) ......................................... 19

*In re: Modern Textile, Inc.*, 900 F.2d 1184 (8th Cir. 1990)...................................... 19

*In re: Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990)................................................. 1

*In re: Stephen A. Cacioli, D.A.N. Joint Venture*, 463 F.3d 229 (2d Cir. 2006) ..................... 2

*In re: Walnut Assocs.*, 145 B.R. 489 (Bank. E.D.Pa. 1992)........................................ 19

*In re: Xonics*, 813 F.2d 127 (7th Cir. 1987) ....................................................... 11

*In re: Yasin*, 179 B.R. 43 (Bank. S.D.N.Y. 1995) .................................................. 19

*McCord ex rel. Bean v. Agard*, 252 F.3d 113 (2d Cir. 2001) ....................................... 2

*Reorganized Solomat Enters., Inc. v. Ibar, Bierce & Kenerson, PC*
*(In re: Solomat Partners, LP)*, 231 B.R. 149 (2d Cir. BAP 1999)................................... 11

*Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846 (4th Cir. 2001) ....................................... 23

*Saravia v. 1736 18th Street, N.W.*, 844 F.2d 823 (D.C. Cir. 1988) ................................ 24

STATUTES & RULES

11 U.S.C. § 101(5)............................................................................... 14-15

11 U.S.C. § 362.................................................................................. 2

11 U.S.C. § 365.................................................................................. 19, 24

28 U.S.C. § 158................................................................................. 1-2

28 U.S.C. § 959.................................................................................. 24

28 U.S.C. § 1334(b)............................................................................. 10-11

ARK. CODE ANN. §23-112-102 ...................................................................... 18, 24

ARK. CODE ANN. §23-112-104 ...................................................................... 24

ARK. CODE ANN. §23-112-106 ...................................................................... 18

ARK. CODE ANN. §23-112-401 [repealed] ........................................................... 18, 24

ARK. CODE ANN. § 23-112-403 ..................................................................... 18, 24

FED. R. BANK. P. 8001 ........................................................................... 1

Brief of Appellant Crain CDJ, LLC

FED. R. BANK. P. 8002 ............................................................................. 1

FED. R. BANK. P. 8006 ............................................................................. 1

FED. R. CIV. PRO. 12 ............................................................................... 10

MISCELLANEOUS

COLLIER ON THE DEFINITION OF CLAIM UNDER THE BANKRUPTCY CODE,
2009 EMERGING ISSUES 968 (LEXIS 2009) ............................................ 15

Merriam-Webster Online Dictionary, www.m-w.com (Nov. 8, 2009) ................................ 16

BASIS FOR APPELLATE JURISDICTION

Section 158 of Chapter 6 of Title 28 of the United States Code confers jurisdiction on district

courts to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges..." 28 U.S.C §

158(a). An appeal is taken as a matter of right. *Ades-Berg Investors v. Breeden*, 439 F.3d 155 (2d Cir.

2006) (citing 28 U.S.C § 158(a)(1)). In addition, "the standards for determining finality in bankruptcy

differ from those applicable to ordinary civil litigation." *In re: Sonnax Indust.*, 907 F.2d 1280 (2d Cir.

1990). In bankruptcy, finality "is more flexible than in ordinary civil litigation." *In re: Fugazy Express,*

*Inc.*, 982 F.2d 769 (2d Cir. 1992) (quoting *In re: Hooker Invests., Inc.*, 937 F.2d 833 (2d Cir. 1989)).

When a party seeks to appeal a decision that is, in substance, an injunction, the Second Circuit

considers the decision final if the record suggests that the bankruptcy court contemplates no further

proceedings on that issue. *In re: Lomas Financial Corp.*, 932 F.2d 147 (2d Cir. 1991). In other words, an

injunction that will operate as "a 'final determination of the rights of the parties to secure the relief they

seek" is a final appealable order appealable. *In re: Ernst & Young, Inc.*, 135 B.R. 517 (S.D.Ohio 1991).

To exercise this right, the appellant must file a notice of appeal with the clerk within the time

allowed by Rule 8002. FED. R. BANKR. P. 8001. The notice of appeal is due 10 days after entry of the

judgment, order, or decree appealed from. *Id.* at 8002. The designation of the record on appeal and

statement of issues is due 10 days after the notice of appeal. *Id.* at 8006.

In the present case, the Bankruptcy Court held a hearing on August 28, 2009 to consider a joint

motion of Debtors and Chrysler Group, LLC ("New Chrysler") for an order enforcing the Sale Order (*see*

*infra* for definition) and the Rejection Order (*see infra* for definition). As a result of that hearing, on

August 31, 2009 Judge Gonzalez ordered, among other things: an injunction commanding Crain CDJ,

LLC ("Crain") to withdraw its Objection with the Arkansas Motor Vehicle Commission by September

10, 2009; sanctions of $10,000.00 per day for failing to withdraw the Objection; and an injunction

preventing Crain from pursuing any future action against New Chrysler. *See* Enforcement Order. The August 31st Enforcement Order was a *de facto* "final determination of [Crain's] rights . . . to secure the relief [it sought]."

Crain filed its Notice of Appeal on September 9, 2009, nine days after the court's order appealed from. Crain Notice of Appeal. Crain then filed its initial Designation of Record on September 18, 2009, nine days past the Notice of Appeal. Crain Desig. R. Pursuant to 28 U.S.C. § 158, all conditions precedent have been satisfied, and appellate jurisdiction is appropriate.[1]

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

### STATEMENT OF ISSUES ON APPEAL

I.     The bankruptcy court lacked subject-matter jurisdiction over Crain's Objection with the AMVC.

II.    Debtors lack standing to challenge Crain's Objection with the AMVC.

III.   Neither the Rejection Order nor the Sale Order prohibit Crain's Objection with the AMVC.

### THE STANDARD OF REVIEW FOR ALL ISSUES IS *DE NOVO*

The applicable standard of review is well established. On appeal, the bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *In re: Stephen A. Cacioli, D.A.N. Joint Venture*, 463 F.3d 229 (2d Cir. 2006); *McCord ex rel. Bean v. Agard*, 252 F.3d 113 (2d Cir. 2001); *Ford v. Bd. of Managers of Cameo Townhouses at Massapequa*, 2009 U.S.Dist.LEXIS 13124 (E.D.N.Y. Feb. 18, 2009).

---

[1] In fairness to Debtors and New Chrysler, they requested in the Enforcement Motion a holding that Crain and other dealerships had violated the automatic stay of 11 U.S.C. § 362 and sanctions for so doing. The Court did not reach those issues. More than two months have passed since entry of the Enforcement Order, and no attempts have been made by the Court, Debtors, or New Chrysler to seek any ruling with respect to the automatic stay; Crain is uncertain as to whether the bankruptcy court intends to rule since Crain's withdrawal of its Objection with the AMVC. The issue of any past stay violation or any sanctions which could flow therefrom are entirely separable issues from the injunction which issued, and do not prevent an appeal.

Where a bankruptcy court's opinion and order involve solely a question of law, an appellate court reviews that decision *de novo*. *In re: Application of the New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir 2009). The bankruptcy court's interpretation of an order or final decree is a conclusion of law subject to *de novo* review. *In re: Duplan Corp.*, 212 F.3d 144 (2d Cir. 2000); *Bellefonte Reins. Co. v. Aetna Cas. & Surety Co.*, 903 F.2d 910 (2d Cir. 1990) (holding "The proper standard for appellate review of a pure textual construction by the district court… is de novo.").

This appeal centers on the interpretation of two orders: the Sale Order and the Rejection Order (as later defined). It also deals with interpretation of the opinions accompanying those orders. Interpretation of the language of these orders and opinions is subject to *de novo* review. The appeal also involves subject-matter jurisdiction, standing, and Code authority to preempt state laws enacted pursuant to police powers, all questions of law, and all reviewed *de novo*.

## STATEMENT OF THE CASE

This case comes to the District Court from an unprecedented bankruptcy proceeding of the third largest domestic auto manufacturer. This section exposes the general nature of the case, followed by the procedural history relevant to the issues before the District Court. Due to the convoluted nature of the case, this section defines terms used for brevity throughout the remainder of the document. It will then lay-out more factual detail relevant to the appealed issues, focusing particularly on the language of the Rejection Order and Rejection Opinion, reserving some of the discussion of the Sale Order and Sale Opinion for the Argument section.

NATURE OF THE CASE

This case is an appeal from an order of the United States Bankruptcy Court for the Southern District of New York. The order appealed purportedly interprets two prior orders of the same court. In reality, the Enforcement Order went far beyond the clear and express boundaries of the two prior orders,

impermissibly expanding their breadth and scope not only beyond the very terms of those orders, but beyond the permissible bounds of bankruptcy law.

The District Court is tasked with determining whether jurisdiction existed over the Enforcement Motion, and whether the particular parties bringing it had standing. The appeal asks whether the Sale Order, Sale Opinion, Rejection Order, and Rejection Opinion did, in fact, state as the Enforcement Order held, or whether the bankruptcy court essentially rewrote them at a later date. This Brief demonstrates why the Enforcement Order must be reversed.

<u>IMPORTANT DEFINITIONS AS USED IN THIS BRIEF</u>

As used throughout this Brief, the following terms are defined as follows:

**"Affidavit"**  The Arkansas Motor Vehicle Commission Affidavit of David W. King, Assistant Secretary of Chrysler Group LLC dated June 22, 2009, as offered into evidence during the hearing held on 8/27/09 (attached to Crain Amend. Desig. R. (Docket No. 5701).

**"AMVC"**  The Arkansas Motor Vehicle Commission.

**"AMVCA"**  The Arkansas Motor Vehicle Commission Act (ARK. CODE ANN. §§ 23-112-101, *et seq.*).

**"Enforcement Motion"**  The Notice of Hearing on Joint Motion of Debtors and Debtors in Possession and Chrysler Group LLC, Pursuant to Sections 105, 362, 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9020, For an Order Enforcing Automatic Stay and Provisions of (A) Order (I) Authorizing the Sale of Substantially All of the debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief; and (B) Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief (Docket No. 5162).

**"Enforcement Order"**  The Opinion Granting Joint Motion of Debtors and Debtors in Possession and Chrylser Group LLC for an Order Enforcing Automatic Stay and Provisions of (A) Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts an Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief; and (B) Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain

Related Relief (Docket No. 5372).

| | |
|---|---|
| **"Objection"** | Crain CDJ's Complaint filed with the Arkansas Motor Vehicle Commission and attached to the "Enforcement Motion" as Exhibit D (Docket No. 5162). |
| **"Rejection Motion"** | The Motion to Reject Lease or Executory Contract/Omnibus Motion of Debtors and Debtors in Possession for an Order, Pursuant to Sections 105, 365, and 525 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief, together with the Notice of Hearing thereto (Docket No. 780). |
| **"Rejection Opinion"** | The Opinion Regarding Authorization of Rejection of All Executory Contracts and Unexpired Leases with Certain Domestic Dealers and Granting Certain Related Relief (Docket No. 4145). |
| **"Rejection Order"** | Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief (Docket No. 3802). |
| **"Reply to Response to Enforcement Motion"** | Consolidated Reply of Debtors and Debtors in Possession and Chrysler Group LLC to Reponses to Joint Motion of Debtors and Debtors in Possession and Chrysler Group LLC, Pursuant to Sections 105, 362 and 365 of the Bankruptcy Code and Bankruptcy Rule 9020, For an Order Enforcing Automatic Stay and Provisions of (A) Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (II) Granting Related Relief; and (B) Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief (Docket No. 5303). |
| **"Response to Enforcement Motion"** | Objection of Crain CDJ, LLC to Joint Motion of Debtors and Debtors in Possession and Chrysler Group LLC, Pursuant to Sections 105, 362, 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9020, For an Order Enforcing Automatic Stay and Provisions of (A) Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authroizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief; and (B) Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases With Certain Domestic Dealers and (B) Granting Certain Related Relief; and Brief in Support (collectively) (Docket Nos. 5259 & 5260) |
| **"Sale Motion"** | The Motion of Debtors and Debtors in Possession, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, For (I) An Order |

Brief of Appellant Crain CDJ, LLC

(A) Approving Bidding Procedures and Bidder Protections for the Sale of Substantially all of the Debtors' Assets and (B) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof: and (II) An Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures, and (C) Granting Certain Related Relief (Docket No. 190).

**"Sale Opinion"**     The Opinion Granting Debtors' Motion Seeking Authority to Sell, Pursuant to 11 U.S.C. § 363, Substantially All of the Debtors' Assets (Docket No. 3073).

**"Sale Order"**     The Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief (Docket No. 3232).

COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW

This case began on April 30, 2009 when Chrysler, LLC and 24 of its domestic direct and indirect subsidiaries (collectively "Debtors")[2] filed a petition with the Bankruptcy Court for the Southern District for New York to open a Chapter 11 bankruptcy proceeding. Sale Opinion, at 1. Debtors and their related entities together comprise one of the largest automobile and vehicle manufacturers in the United States. *Id.*, at 2-3. Debtors' vehicles prior to bankruptcy were manufactured under the names "Chrysler," "Dodge," and "Jeep®." *Id.*, at 3.

Crain CDJ, LLC ("Crain") was a franchisee of Debtors selling all three of those nameplates at one dealership in Little Rock, Arkansas. On May 3, 2009, Debtors filed the Sale Motion, seeking permission to sell substantially all of their assets. Sale Order, at 1. Crain entered an appearance in this case on May 22, 2009. Joinder of Crain CDJ, LLC to Objection to Committee of Chrysler Affected Dealers. The hearing on Debtors' Sale Motion was conducted between May 27 and May 29, 2009. Sale Order, at 3.

On May 31, 2009 the Court issued its Sale Opinion, followed by the Sale Order on June 1. Sale

---

[2] In addition, on May 19, 2009 Alpha Holding, LP filed a bankruptcy petition; which was also consolidated. Sale Order, at 2.

Opinion; Sale Order.  Allowing the sale, the Court ruled that Debtors could sell individual assets to a new entity, then called New CarCo Acquisition, LLC;[3] the assets sold did not include 789 individual dealer franchise agreements, including Crain's.  *See* Sale Order.  The sale consummated was not a stock sale, but a partial asset sale.  *See* Sale Order, at Ex.

On May 14, 2009, Debtors filed their Rejection Motion, seeking to reject 789 executory dealership franchise agreements, including Crain's.  Rejection Motion.  The hearings on that motion were held on June 4 and June 9, 2009.  Rejection Opinion, at 1.  On June 9, Judge Gonzales entered the Rejection Order, authorizing Debtors to reject all 789 executory franchise agreements.  Rejection Order.  That order was followed on June 19, 2009 with the Rejection Opinion, clarifying the purposes and bases of the order.  Rejection Opinion.

Neith Crain nor any other rejected dealership ultimately prosecuted an appeal for either Order, relying upon their express terms and provisions.

On or about June 10, 2009, Debtors and New Chrysler consummated the sale transaction.  Rejection Opinion, at 17.  Thereafter, on or about June 22, 2009, New Chrysler filed an application with the AMVC to establish a dealership for Chrysler, Dodge, and Jeep® vehicles in Little Rock, Arkansas, completing, as part of that process, an Affidavit promising compliance with the AMVCA.  Crain Amend. Desig. R., at Ex.  Based upon New Chrysler's application for a new dealership in Little Rock, Crain submitted its Objection. Enforcement Motion, at Ex. D.

Debtors and New Chrysler retaliated by filing the Enforcement Motion, asking that the Court interpret its prior Sale Order and Rejection Order to prohibit Crain's Objection.  *See* Enforcement Motion. Crain responded, and Debtors and New Chrysler replied.  Resp. to Enforcement Motion; Reply to Resp.

---

[3] New CarCo Acquisition, LLC was later renamed Chrysler, LLC ("New Chrysler") after the sale transaction was completed.

to Enforcement Motion. A hearing was held but no testimony taken,[4] and the Court issued the

Enforcement Order on August 31, 2009. T. Hearing 8/27/09; Enforcement Order. It is from the

Enforcement Order that Crain appeals.

FACTUAL BACKGROUND

Without reiterating the procedural history above, there are additional facts necessary to the

Court's understanding of this case on appeal, as well as the intent of the rulings below.

### The Bankruptcy Court States Its Purpose for Rejecting Crain

Prior to its bankruptcy filing, Debtors' primary competitors were other Original Equipment

Manufacturers ("OEMs"), such as Ford, General Motors, Toyota, Nissan, Honda, and Hyundai. *Id.*, at 3.

The court found that these competing OEMs were more efficient than Debtors because they established

"much smaller dealership networks with new and better location and facilities in growing markets…"

Rejection Opinion, at 12. The court went on to rationalize the rejection of dealerships by saying that New

Chrysler would benefit from a smaller dealership network, resulting in higher sales per dealership,

providing more resources for marketing, reinvestment, facilities, customer services, and employees. It

held that:

> A smaller dealership network is expected to concentrate profits such that more capital
> improvements will be made to a dealership facility, thereby attracting more customers
> and providing customers with a better experience. A smaller dealership network would
> also enable the Debtors to reduce expenses and inefficiencies in the distribution system,
> including reducing costs spent on training, new vehicle allocation personnel, processes,
> and procedures, dealership network oversight, auditing and monitoring, and additional
> operational support functions.

*Id.* This is the rationale utilized by the court in upholding both Debtors' rejection of these franchise

agreements, and New Chrysler's decision not to assume them. *See id.*, at 16.

Fortifying this reasoning, the bankruptcy court went on to hold that, at the time of the Rejection

---

[4] At the hearing on August 27, 2009, the parties stipulated to the admission of one
exhibit, however—New Chrysler's application with the AMVC. T. Hearing 8/27/09, at 106-07.

Opinion, Debtors had already transferred substantially all of its assets to New Chrysler, leaving it with no

facilities to fulfill the rejected franchise agreements. *Id.* at 17. Therefore, said the court, rejection of the

agreements could only benefit the estate. *Id.* This procedural bar was concocted and made possible

solely by Debtors' ubiquitous timing of the sale and rejection. Nevertheless, the bankruptcy court said:

> [T]here is no doubt that the acceleration of dealership rationalization benefited New
> Chrysler by enabling it to avoid the costs attending to such reduction if it took place
> outside bankruptcy.

*Id.* The bankruptcy court would not entertain individual consideration as to the each dealership's

objection, but relied upon Debtors' representation that it exercised good business judgment. *See id.,* at

18-19.

### *The Bankruptcy Court Comments on Preemption*

One of the arguments against rejection almost universally advanced was that the various state

dealership laws enacted across the country were not preempted by Section 365. The court overruled that

argument, but narrowly tailored its opinion to provide that state dealership laws like AMVCA[5] were

preempted by Section 365 "with respect to *rejection* of the Rejected Agreements." *Id.* at 22 (emphasis

supplied). It expounded on this holding by saying:

> The issue that arises in the rejection context is the right of the debtor to no longer perform
> under a contract. It is that right, "to no longer perform," and the consequences therefrom,
> that would be in direct conflict with a state statute that would require continued
> performance *by a debtor* that is being preempted.

*Id.,* at 23 (emphasis supplied). It noted that rejection of the franchise agreements would not terminate

them, but merely gave Debtors the right to no longer perform. *Id.* at 41.

In the end, the court issued an order granting the Rejection Motion which stated:

All issues relating to the allowance, amount, priority and treatment of any Rejection

---

[5] The various state dealership laws around the country were not discussed or even cited
independently by the bankruptcy court in any opinion, despite significant differences from state
to state. *See* Rejection Opinion; Rejection Order.

Damage Claim *or any other claim, right or remedy* by the Affected Dealers are preserved… None of the evidence provided by the Debtors, Affected Dealers or any other party in interest that was admitted into evidence in connection with the Motion, the Objections, the Hearing and this Order shall be treated as *res judicata* or collateral estoppel as to the Debtors, their estates, Affected Dealers or any other party in interest, nor shall any such evidence have preclusive effect on the Debtors, their estates, Affected Dealers, or any other party in interest in connection with any other proceeding, including in connection with the assertion of Rejection Damage Claims *or other claims, rights or remedies by an Affected Dealer.*

…[E]ach Affected Dealer shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer *of the Debtors.*

Rejection Order, at 4-5 (emphasis supplied). This being the directive of the bankruptcy court, it limited the effect of rejection to Debtors, did not extend it to New Chrysler, and excluded any other types of claims which Crain might later assert.

## ARGUMENT

The Argument section of Crain's Brief delves into several issues of law. First, it will question subject-matter jurisdiction and standing in the Enforcement Motion, vis-à-vis Crain's Objection having nothing to do with Debtors or their estates. Second, it the language of both Orders and Opinions from whence the Enforcement Order prodigiously appeared, showing exactly why the Enforcement Order is far afield of anything decided before it. Finally, Crain's Brief discussed the overarching contextual background of the two Opinions and Orders allegedly interpreted, casting a long and doubtful shadow over both the term "enforcement" and the public policy underlying allowable preemption as stated in the Enforcement Order.

The Bankruptcy Court Lacked Jurisdiction Over Crain's Objection with the AMVC

Grants of jurisdiction to District and Bankruptcy Courts are statutorily-created, without which the courts cannot take action. Any action brought without subject-matter jurisdiction will be dismissed. *See, e.g.* FED. R. CIV. P. 12(b)(1).

Federal court jurisdiction in bankruptcy cases is granted by Title 28, Section 1334(b) of the

United States Code, which says, "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

As interpreted by various Courts of Appeals, including the Second Circuit, to be "related to" a bankruptcy for jurisdictional purposes, the case or controversy must affect the Debtor or property of the estate. *See In re: Xonics*, 813 F.2d 127 (7th Cir. 1987); *Reorganized Solomat Enters., Inc. v. Ibar, Bierce, Bierce & Kenerson, PC (In re: Solomat Partners, LP)*, 231 B.R. 149 (2d Cir. BAP 1999). Mere statements in an order that the Court retains jurisdiction to interpret its order do not confer jurisdiction over related matters that have no effect on the Debtor's estate. *In re: Fedpak Sys.*, 80 F.3d 207 (7th Cir. 1996); *In re: Chrystal Mfg. & Packaging, Inc.*, 60 B.R. 816 (Bank. N.D.Ill. 1986).

Jurisdiction being a legal keystone, the first inquiry in this case must be: 'Did the Bankruptcy Court have jurisdiction over Crain's Objection filed with the AMVC?' The seminal factor is whether or not the Objection could have an impact on Debtors or their estates. Indeed, it would not. The Crain franchise agreement was never assumed by New Chrysler; it was an asset left behind when Debtors conducted the sale of specific assets. Crain's franchise agreement was then rejected by Debtors, the effect of which was to breach it and liquidate Crain's damages as an unsecured claim as of the date of petition filing. *See* discussion, *infra*.

Crain's Objection with the AMVC simply alleged that, pursuant to Arkansas law, if New Chrysler intends to place a dealership in Little Rock, it is obligated to first offer that dealership to Crain. As explained below, that obligation rises like a Phoenix out of New Chrysler's actions taken in the State of Arkansas in front of the AMVC. It does not attempt to collect any money from the Debtors or compel the Debtors to take any action. The Debtors are not a party to the AMVC application filed by New Chrysler or to Crain's Objection. Moreover, Crain has not attempted to enforce the rejected franchise

agreement as to Debtors or collect money. All of Crain's claims against Debtors have been liquidated in the bankruptcy court.

Thus, as explained below, Crain's objection is directed solely to New Chrysler and is based solely upon New Chrysler's own, independent actions taken in the State of Arkansas. The objection does not and cannot affect Debtors or any property of the estate, and therefore, the Bankruptcy Court lacked jurisdiction over Debtors' and New Chrysler's Enforcement Motion.

In the absence of subject-matter jurisdiction, Debtors' and New Chrysler's Enforcement Motion must be dismissed, and the Enforcement Order dismissed as void.

Debtors Lacked Standing to Challenge Crain's Objection with the AMVC

The corollary point to the jurisdictional problem is one of standing. Debtors also lack standing to participate in the Enforcement Motion.

Standing, like jurisdiction, is a threshold matter. In order to establish standing, a party must "present an injury that is concrete, particularized, and actual or eminent; fairly traceable to the [opposing party's] challenged action; and redressable by a favorable ruling." *Horne v. Flores*, ___ U.S. ___, 129 S.Ct. 2579 (2009).

As discussed above, Debtors are still in possession of the franchise agreement. Crain's objection with the AMVC is directed solely to New Chrysler, and Crain is neither asking for relief against Debtors nor seeking any compensation from Debtors or the estate. Debtors and the estate are not being affected by Crain's Objection, and they are not proper parties to this appeal or the Enforcement Motion below. Insomuch as Debtors lack standing, they should be dismissed from this Appeal and the Enforcement Motion below.

Neither the Rejection Order Nor the Sale Order Prohibit Crain's Objection with the AMVC

The Rejection Order being the more easily discerned document, it is in large part set out in the

Statement of Facts above. The Sale Order and corollary Opinion are dissected here.

### The Rejection Order Affected Only Debtors, but Had No Effect on New Chrysler

Debtors undoubtedly structured and timed the Sale Motion and Rejection Motion in hopes of procedurally cutting-off the rights of rejected dealers. Debtors intended that by scheduling the Sale Motion prior to the Rejection Motion, they could bolster their Rejection Motion. As part of the Sale Motion, New Chrysler[6] picked and chose what assets of Debtors it wanted to purchase, as well as what contracts belonging to Debtors it wanted to assume and cure. Neither New Chrysler nor Fiat did any independent evaluation of which franchise agreements or how many it wanted to assume; they merely relied upon Debtors' representations as to the number and particular franchise contracts that New Chrysler would agree to take. This vested sole discretion in Debtors. Rejection Opinion, at 15.

Timing is important to the Courts' understanding of this appeal. The Sale Motion was granted giving Debtors the authority to sell—and New Chrysler the authority to buy—a lengthy list if assets and contracts. Sale Order, at Ex. Debtors and New Chrysler specifically excluded all of the franchise agreements (including Crain's) that it had moved to reject. *Id.* After the sale transaction, Debtors were essentially left with no ability to continue the design, manufacture, distribution, or sale of motor vehicles. Sale Opinion, at 17.

Thereafter, at the hearing on Debtors' Rejection Motion, Debtors argued that they had no facilities left with which to manufacture automobiles. Indeed, the Bankruptcy Court held onto that argument as a key reason for rejecting Crain's and the others' dealership franchises, reasoning that if Debtors could no longer produce or distribute vehicles, then rejection of any contracts for sale of vehicles

---

[6] New Chrysler was actually an entity created anew as part of the purchase process, which was to be owned in various percentages by the United States government, Canadian government, Voluntary Employee Benefit Account, and Fiat, S.p.A. ("Fiat"). After consummation of the asset sale, if allowed, this newly created entity would change its name to "Chrysler, LLC." Despite multiple ownership of New Chrysler, it was at all times controlled by Fiat and Debtors. Sale Opinion.

was in the Debtors' best interest. *Id.* In this way, the timing of the two motions was manipulatively and offensively utilized.

This timing also speaks volumes about the effect of the rejection. The rejection of Crain's franchise agreement dealt only with the *Debtors*, the sale having already been consummated. Rejection Order, at 4-5 (stating "[E]ach Affected Dealer shall have no further rights… to act as an Authorized Dealer *of the Debtors*.") At the time of the hearing on the Rejection Motion and the Rejection Order, New Chrysler was not in possession of Crain's franchise agreement, and had no interest in it (either literally or figuratively). Thus, New Chrysler was not a party to the Rejection Motion. *See* Rejection Opinion; Rejection Order. The Rejection Order did not bind or deal in any way with New Chrysler, and New Chrysler cannot bootstrap itself using that document.

### The Sale Order Explicitly Excludes From the "Free and Clear" Provisions Liabilities to Governmental Units Under Police and Regulatory Statutes

That brings consideration around to the Sale Order. It is necessary to understand and review the specific language of the Sale Order for purposes of this appeal. The Sale Order does not prohibit the type of action which the AMVC might take against New Chrysler. Even assuming, *arguendo*, that the type of action AMVC could take falls within the meaning of "Claims" as used in the Sale Order, it specifically *carves out* and *excepts* actions taken by governmental units under police or regulatory powers.

The Sale Order transferred the assets selected by Debtors to New Chrysler free and clear of "Claims." Sale Order. The Sale Order defines "Claims" as follows:

> …liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, restrictions and interest and encumbrances of any kind or nature whatsoever whether arising before or after the Petition Date, whether at law or in equity, including all claims or rights based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under and Assume Agreement and all rights at law or in equity (collectively "Claims")(other than certain liabilities that are expressly assumed or *created*

*by the Purchaser*, as set for in the Purchase Agreement *or as described herein*)…

Sale Order, at 2-3. While the definition is a mouthful to swallow, "Claims" does not protect New

Chrysler from a state administrative licensing action such as the one before the AMVC.

Crain has not challenged the transfer of the Purchased Assets, the validity of such, or asked to be

excused from performance under an assumed contract, so those portions of the definition do not apply.

Crain does not assert a lien against any property, real or personal, and this is not any sort of environmental

claim.

### Crain's Objection Is Not a Claim Within the Meaning of 11 U.S.C. § 101(5)

It then boils down to whether or not Crain's Objection is a 'claim' as defined by the Bankruptcy

Code, or a liability, encumbrance, right, remedy, restriction, or interest.

Looking first to the Code, it defines a 'claim' as:

Any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured.

11 U.S.C. § 101(5). This definition of a 'claim,' while broad, is not boundless. COLLIER ON THE

DEFINITION OF CLAIM UNDER THE BANKRUPTCY CODE, 2009 EMERGING ISSUES 968 (LEXIS 2009). As

Collier's, the leading treatise on bankruptcy practice, points out:

[A]n equitable remedy for breach of performance, with respect to which such breach does not give rise to a right to payment are not claims within the Code's contemplation, and would not therefore be dischargeable in bankruptcy…"

*Id.* Thus, to the extent that the proceeding before the AMVC is equitable in nature, the Bankruptcy Code

definition of 'claim' will not cover it.

### Crain's AMVC Objection Is Not a Liability, Encumbrance, Right, Remedy, Restriction or Interest

That leaves only the supurfluage: "liabilities, encumbrances, rights, remedies, restrictions and

interest." The word "liabilities" generally means "Something for which one is liable; *especially* **:**

pecuniary obligation : **DEBT**." Merriam-Webster Online Dictionary, www.m-w.com (Nov. 8, 2009)

(emphasis in original). The action before the AMVC is not pecuniary in nature, and does not and will not

result in a debt. An "encumbrance" is defined as "A claim (as a mortgage) against property." *Id.*

Likewise, any action the AMVC may take is not an interest in property. The term "right" is a bit more

complex. Although its definitions are many, in context, only the noun form makes literary sense. As a

noun, and considering the legal context of its writing, a "right" could be either "The interest that one has

in a piece of property — often used in plural <mineral rights>" or "a privilege given stockholders to

subscribe pro rata to a new issue of securities generally below market price." *Id.* (emphasis in original).

There should be little question that the AMVC objection had nothing to do with stocks or other securities.

Falling back again to the AMVC objection, clearly Crain is not asserting any type of property interest—it

merely requested that the AMVC enforce Arkansas law respecting priority of licensure.

"Remedy" is defined as "The legal means to recover a right or to prevent or obtain redress for a

wrong." *Id.* This definition is not highly instructive, considering that a wrong could be the use of a curse

word or some other action without a legal basis. The focus then, is on the recovery of a "right," tying its

meaning back to that term. Finally, an "interest" as a noun can be either a "right, title, or legal share in

something," the "charge for borrowed money generally a percentage of the amount borrowed," or "the

profit in goods or money that is made on invested capital." *Id.* (emphasis in original). Crain has not

asserted any property right or title, and the AMVC is not concerned with interest earned on capital

investments. The bankruptcy court has already held that the rejected dealers' rights under state dealer

laws are not "interests.". Sale Opinion, at 42 (saying "the Court notes that the objectors' rights are

contractual and not an 'interest' that attaches to the Debtors' property, notwithstanding any suggestion

implication that state dealer statues create such an 'interest,' and, therefore, objections raising that issue

are overruled.") None of these definitions apples to the AMVC action.

Brief of Appellant Crain CDJ, LLC

### Crain's AMVC Objection Is an Obligation Created by New Chrysler

The Court then doubly reinforced this point. First, the Sale Order excludes from the definition of released "Claims" all liabilities that are *"created by the Purchaser,"* meaning New Chrysler. Sale Order, at 3. As discussed immediately below in detail, Debtors rejected Crain's franchise agreement, and although it was not voided or terminated, Debtors were relieved of any further obligation to perform under it. The obligation which Crain asks the AMVC to enforce is one of preference in licensing new automobile franchises, and which was created anew out of New Chrysler's application to the AMVC for a franchise license. *See infra.*

### Crain's AMVC Objection Is an Obligation Specifically Exempted by Paragraph 23

But even before getting to that discussion, the definition of "Claims" also specifically excludes other types of liabilities *"as described herein."* *Id.* The Sale Order contemplates that later provisions will outline specific obligations which are not released as part of the asset sale.

Turning to Paragraph 23 of the Sale Order, it plainly and unambiguously states:

> Nothing in this Sale Order or in the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order.

Sale Order, at 36. This an example of a specific obligation described in the Sale Order which is not intended to be released. The unassumed (and later rejected) dealers had a right to rely on the specific provisions of the Court's Sale Order, including Paragraph 23, in deciding whether to appeal. Debtors and New Chrysler are now estopped to deny the existence of that verbiage.

Because the Sale Order specifically excluded from the "free and clear" provisions any responsibility of New Chrysler to the AMVC, Crain decided not to appeal the Sale Order.

No honest contention can be advanced that the AMVC action is anything less than governmental regulatory action based upon statute enacted pursuant to Arkansas' police powers. The AMVCA states

that:

> It shall be unlawful[] [t]o fail to continue in full force and operation a motor vehicle dealer franchise agreement, notwithstanding a change, in whole or in part, of an established plan or system of distribution or ownership of the manufacturer of the motor vehicles offered for sale under the franchise agreement.

ARK. CODE ANN. § 23-112-403(a)(2)(P)(i) (LEXIS 2004 & Supp. 2007). The Arkansas General

Assembly stated its own legislative intent, by incorporating it into the statute proper:

> The General Assembly finds and declares that the distribution and sale of motor vehicles in Arkansas vitally affects the general economy of the state and the public interest and the public welfare.
>
> The General Assembly further finds and declares that it is necessary, in the exercise of its police power, to regulate and to license motor vehicle manufacturers, factory branches and divisions, distributors, distributor branches and divisions, distributor representatives, new motor vehicle dealers, and salespersons doing business in Arkansas…

*Id*. at § 23-112-102 (entitled "Legislative Findings—Purpose"). The Arkansas General Assembly, as a

matter of law, passed the AMVCA pursuant to its police powers.[7]

Crain filed its objection with the AMVC, merely requesting that before AMVC licensed another

dealership in the Little Rock area, it consider that Crain has a franchise agreement for the sale of the same

vehicles. It is up to AMVC to determine whether or not Crain should be first offered the franchise

pursuant to Title 23, Chapter 112, Section 403 of the Arkansas Code Annotated. While Crain believes it

should, it asked only for the AMVC to review its own laws and enforce them in the licensing procedure.

The ultimate action taken, if any, would be taken by AMVC, not by Crain. AMVC is vested with the

statutory authority to enter orders enforcing the AMVCA. *Id*. at § 23-112-106. Any such actions taken

would be equitable in nature. *See id*.

---

[7] The "Unlawful Practices" subchapter (including Section 403) of the AMVCA was passed in 1977, and also contains an Emergency Clause which reads:
> [A]n emergency is declared to exist and this Act being necessary for the immediate preservation of the public peace, health and safety, it shall take effect upon the date of its passage.

ARK. CODE ANN. § 23-112-401 [repealed], at Effective Dates.

Debtors and New Chrysler cannot have it both ways, arguing that the orders in question are unambiguous and bar all claims, including all future responsibility to state dealer regulatory bodies, while completely ignoring the plain exclusion of Paragraph 23.  There is no way to square this language with any other contention than the bankruptcy court's intent at the time of the Sale Order to hold New Chrysler to all of its state regulatory responsibilities going forward.  The Enforcement Order is inapposite and incorrect.

### New Chrysler's Duties to the AMVC Are New Duties Arising from Its Own Actions, and Are Not Successor Liabilities

Backing up one step, the Brief must consider "Claims" for liabilities "created by the Purchaser." Although at the Bankruptcy Court level, Debtors tried to portray the AMVC action as "successor liability," that nomenclature is inappropriate.

First, the effect of rejection of the franchise agreement must be understood.  Rejection of an executory contract in bankruptcy is a remedy created by the Bankruptcy Code, and without a common-law equivalent.  11 U.S.C. § 365.  Luckily, numerous courts around the country have endeavored to discern the effect of rejection.  It is now black-letter law that rejection of an executory contract frees the debtor of further obligations to perform, results in the equivalent of a breach, and liquidates damages for the breach as of the date of the filing of the bankruptcy petition. *In re: Lavigne*, 114 F.3d 379 (2d Cir. 1997); *In re: Austin Dev. Co.*, 19 F.3d 1077 (5th Cir. 1994); *In re: Modern Textile, Inc.*, 900 F2d 1184 (8th Cir. 1990); *In re: Mitchell*, 249 B.R. 55 (Bank. S.D.N.Y. 2000); *In re: Yasin*, 179 B.R. 43 (Bank. S.D.N.Y. 1995); *In re: Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bank. S.D.N.Y 1992); *In re: Walnut Assocs.*, 145 B.R.489 (Bank. E.D.Pa. 1992).  Debtors were, by rejection, freed from their obligations to provide any more support services, vehicles, or products to Crain.  Crain now has a monetary claim against Debtors in bankruptcy.  The franchise agreement, however, still exists.

Thus, Crain admittedly cannot bring suit against Debtors for money damages or even injunctive

relief, because Crain's only remedy against Debtors exists in the context of the bankruptcy. But Arkansas law in this limited situation has a unique twist. It creates a *new duty* upon any new entity that wishes to sell the same nameplate of vehicles once sold to do so through the former dealer.

Consider the context: the Bankruptcy Court went to great lengths in its Sale Order and Rejection Order to reiterate what Debtors and New Chrysler had been espousing as the reason for rejection. Debtors felt like it needed a much leaner, lighter, and less cumbersome dealer network overall to improve profitability as a company. The Court and Debtors cited rationale used by other OEMs like Honda and Toyota, who had much smaller but more profitable dealership networks. Thus, reasoned the Court, where there was redundancy of dealerships, Debtors should be permitted to reject them as unnecessary. This was left solely to the discretion of Debtors, who theoretically applied a formula to determine which dealerships were redundant and unnecessary. New Chrysler (directed by Fiat) did not participate in the selection of dealerships to assume or reject, and relied entirely upon Debtors. New Chrysler did not even set a target number of dealerships it wished to assume. Debtors selected Crain as a dealership to reject as unnecessary.

Not surprisingly, now, immediately after rejection, New Chrysler applied with the AMVC to license a dealership in Little Rock where Crain is located. Until New Chrysler applied for a dealership franchise license, Crain had *no* rights before the AMVC against New Chrysler. But New Chrysler took this unprecedented action of application. It was not mandated by the Bankruptcy Court or the Purchase Agreement. It was not necessitated by the bankruptcy, and is indeed *contrary* to the stated itinerary and bedrock logic behind Crain's rejection. New Chrysler has taken this action entirely on its own, and must answer on its own to the AMVC.

New Chrysler also executed an Affidavit as part of the licensure process, promising to be bound by the laws and provisions of the AMVC. Crain Amend. Desig. R., at Ex. The Affidavit executed by

New Chrysler's representative under oath states:

> I, David W. King, Assistant Secretary of Chrysler Group, LLC do hereby swear or affirm that, in consideration for being licensed as a New Motor Vehicle Dealer, Motor Vehicle Lessor, Manufacturer, Distributor, Manufacturer or Distributor Branch/Division, Second Stage Manufacturer, or Converter in the State of Arkansas, I have received, or been directed to, a copy of the current Arkansas Motor Vehicle Commission ACT and AMVC Rules and will comply with the provisions and any amendments set forth therein to the best of my ability; specifically Subchapter 3 – Licensing and Rules, and Subchapter 4 – Unlawful Practices.
>
> I also understand that any activity on my behalf which is found to be in violation of the Commission ACT and/or Rules as amended, after a hearing before the Commission, could result in the imposition of civil penalties, suspension and/or revocation of my license to do business as a new Motor Vehicle Dealer, Motor Vehicle Lessor, Manufacturer, Distributor, Manufacturer or Distributor Branch/Division, Second Stage Manufacturer, or Converter in the State of Arkansas.

*Id.* No one forced or coerced New Chrysler into executing this Affidavit, and nothing suggests that New Chrysler was unable to comprehend its duties under Arkansas law. New Chrysler independently and with full knowledge agreed that, as a condition to licensure, it would comply with every provision contained in Title 23, Chapter 112, Subchapter 4 (Unlawful Practices) of the Arkansas Code Annotated. That Subchapter includes Section 403's requirement of recognizing prior or existing franchisees. *See* ARK. CODE ANN. § 23-112-403.

This was a new obligation created by New Chrysler's discretionary decision to license a franchise in Little Rock, specifically excluded from the "free and clear" provisions of the Sale Order. If New Chrysler was truly of the belief that it did not have to comply the provisions of the AMVCA because of Debtors' bankruptcy, then it would not have executed the Affidavit. By so doing, it has waived any argument that it is exempt from state regulatory power in Arkansas.

Correspondingly, to presume this sort of action before the AMVC was successor liability would be to say that it was a responsibility *of the Debtors* which existed *before* New Chrysler's license application. This is not the case. But-for New Chrysler's application anew with the AMVC, there was

Brief of Appellant Crain CDJ, LLC

absolutely no responsibility on the party of Debtors to do anything for Crain.[8]

Thus, New Chrysler's obligations—whatever they may be—to the AMVC are new and 'springing' obligations existing only by virtue of actions voluntarily taken by New Chrysler. It is the same obligation which would exist for any new OEM applying for a license in Arkansas, and is neither a type of liability which a bankruptcy could discharge for a non-party, nor one which was discharged under the unambiguous terms of the Sale Order.

### *The Overarching Intent of the Sale and Rejection Orders, as well as Public Policy, Belie Debtors' and New Chrysler's Enforcement Motion*

The Court should consider the overarching theme of all four documents read together, gleaning the context within which this case resides.

First came the Sale Order and Sale Opinion. Those documents passed a number of assets to New Chrysler, but did not pass Crain's franchise agreement, such that New Chrysler never had any privy connection to that agreement before, during, or after the bankruptcy. Sale Order; Sale Opinion. The Court held that Crain's rights, whatever they may be, under the AMVCA were not "interests" which could even pass to New Chrysler by assumption of assets. Sale Opinion, at 42. The court plainly told New Chrysler that it would be subject to any and all state laws going forward after the purchase was consummated. Sale Order, at 36. It also warned New Chrysler that any actions it took after consummation of the sale might result in liabilities for which it would be solely responsible. Sale Order, at 2-3.

Then the Rejection Motion came on for hearing, resulting in the Rejection Opinion and Rejection Order. The Court rationalized and allowed both the non-assumption by New Chrysler and the rejection

---

[8] It is not insignificant to point out, either, that all Crain has done was to send an objection to the AMVC, asking it to apply the law as the AMVC sees fit. The AMVC ultimately will make that decision. The AMVC was not a party to the Sale Motion, the Rejection Motion, or even the Enforcement Motion, which raises serious personal jurisdictional issues.

by Debtors of the dealership franchises, finding that New Chrysler would be best served by a smaller, leaner, non-redundant dealership base. Rejection Opinion, at 12. It was clear to the court that New Chrysler was achieving fiscal benefits from rejection and non-assumption which would never be permitted outside of bankruptcy. *Id*, at 17. This was allowed because the rejected dealerships were assumedly redundant and burdensome to New Chrysler.

Questionably, *less than two weeks* after the sale transaction closed, New Chrysler applied for a license with the AMVCA to put a dealership right back where Crain was located—despite being allowed to reject Crain as unneeded and duplicative. Crain Amend. Desig. R., at Ex.

Not only the express language, but also the core *purposes* of the Sale Order and Rejection Order are violated if New Chrysler is permitted to bypass Arkansas' licensure laws. It is no burden whatsoever to New Chrysler to offer the franchise in Little Rock to Crain, if indeed it has decided that one is needed there. It also furthers the reduction of liabilities to Debtors' estates, achieving multiple stated purposes of the reorganization. The orders and opinions together make clear that the Court never intended to allow New Chrysler to be forever freed of state regulation.

Buttress this with public policy. Speaking of Section 362 (which only applies if an action would have an "impact" on the debtor or bankruptcy estate), the United States Court of Appeals for the Forth Circuit has said:

> We look to the purpose of the law the state is attempting to enforce. If the purpose of the law is to promote "public safety and welfare," or to "effectuate public policy," then the exception applies. On the other hand if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," or to "adjudicate private rights," then the exception is inapplicable... [M]any laws have a dual purpose of promoting public welfare as well as protecting the state's pecuniary interest. The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable.

*Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846 (4th Cir. 2001). Courts are directed to look to state legislative history and interpreting state authority to determine the purpose of the enacted statutes, and whether those

portend of police and regulatory powers. *Christmas v. Md. Racing Comm'n*, 102 B.R. 447 (Bank.
E.D.Md. 1989). Arkansas has made clear that it is the public policy of that State to continue dealership
franchises in tact where possible, for the benefit of the public. ARK. CODE ANN. §§ 23-112-102 & -401
[repealed], at Effective Dates. The state sees no pecuniary gain or benefit from enforcing the continuity
provision.

The bankruptcy court held that any state laws conflicting with the power of *rejection* were
preempted. Rejection Opinion, at 22. Crain does not necessarily disagree with that finding. But the
Enforcement Order essentially holds that New Chrysler, having bought some assets "free and clear" of
liens and claims from Debtors, is forever relieved of duties to the AMVCA and other states' regulatory
agencies. Period. There is no place to draw the line where it would be subject to state regulation, if not
with the application for a *brand new* license. The implications in light of both Chrysler's and General
Motors' recent bankruptcies would leave impotent most state automobile regulatory bodies, and giving
those two OEMs unfair trade advantages. The Court should be mindful that the provision New Chrysler
claims it does not have to abide by is part of the "Unlawful Practices" section of the AMVCA. *See* ARK.
CODE ANN. §§ 23-112-104, *et seq*. Can it now undertake any unlawful practice it fancies in Arkansas?

Numerous federal courts have held that the federal law will not apply to:

[C]ondemn [state laws] to the oblivion of preemption doctrine unless that was the clear
and manifest intent of Congress. Congress has evidenced no such intent in enacting 11
U.S.C. § 365(h); indeed 28 U.S.C. § 959(b) looks in exactly the opposite direction. Nor
will the general bankruptcy policy of fostering the rehabilitation of debtors serve to
preempt otherwise applicable state laws dealing with public safety and welfare.

*Saravia v. 1736 18th Street, N.W.*, 844 F.2d 823 (D.C. Cir. 1988). The courts have held that preemption in
bankruptcy will not supersede local zoning laws (including the need for licensure), actions against bonds
given to the debtor for state building licensure requirements, or laws governing operation of multi-family
dwellings. *Id.*; *In re: Cousins Restaurants, Inc.*, 11 B.R. 521 (Bank. W.D.N.Y. 1981); *In re: Fintel*, 10

B.R. 50 (Bank. Dist.Or. 1981).

Essentially, the interpretation given to the Sale Order and Rejection Order in this most recent

Enforcement Order is one not only beyond the four corners of those documents, but beyond the authority

of the Bankruptcy Code. It is the province of the bankruptcy court to allow Debtors to reject contracts to

better their own reorganization and lessen burdens on their estates; to the extent state law would prevent

that, it may be preempted. But beyond the mere ability to reject a contract, and after the reorganization

and sale of assets, states' various police powers take effect once again in full force. The Enforcement

Order usurps Arkansas' state police powers and espoused duty to see to the welfare of its citizens.

This is an unintended and impermissible end. But it is *only* achieved if the contorted reading of

the Enforcement Order is allowed to stand. It should not.

### CONCLUSION

In conclusion, the Sale Order and Rejection Order are not being challenged here. The

Enforcement Order, on the other hand, is a strained and overly expansive reading of those two

documents, doing injustice, usurping State authority, and adding terms which were not only unintended

by the clear context, but antithetical to the clear purpose.

Crain incorporates by reference Appellants Wisconsin Dealers' Brief in Support of Appeal of the

Bankruptcy Court's Enforcement Order, to the extent not inconsistent with this Brief.

WHEREFORE for all the reasons set out herein, the Enforcement Order should be reversed, the

injunction prohibiting Crain's Objection (and attendant sanctions) vacated, and Crain granted any and all

other just and proper relief to which it may be entitled.

Brief of Appellant Crain CDJ, LLC

Respectfully submitted:

**Davidson Law Firm, Ltd.**
724 Garland, Cantrell at State
Little Rock, AR 72201
(501) 374-9977
Telefax: (501) 374-5917
E-mail: skipd@dlf-ar.com
       slg@dlf-ar.com
       mattheww@dlf-ar.com


By: /s/ Matthew D. Wells
      Matthew D. Wells, *Pro Hac Vice*
      Stephen L. Gershner, *Pro Hac Vice*
      Charles D. Davidson, *Pro Hac Vice*

      - and -

Donald M. Sunshine, 5281
**Sunshine Slott & Sunshine, PC**
150 W 25th St, #503
New York, NY 10001-7404
(212) 695-9112
Email: ssslaw@broadviewnet.net

### CERTIFICATE OF SERVICE

I, Matthew D. Wells, do hereby certify that I have sent via:

☐ Hand-delivery
☐ Telefax
☐ Electronic mail
☑ U.S. Mail, postage prepaid
☑ Federal Court ECF System

this 17th day of November, 2009, a true and complete copy of the forgoing to the following individuals:

**Paul R. Norman, Esq.**
Boardman, Suhr, Curry & Field, LLP
1 S. Pinckney St., 4th Floor
P.O. Box 927
Madison, WI 53701

**Veerle Roovers, Esq.**
Jones Day
222 E. 41st St.
New York, NY 10017

**David G. Heiman, Esq.**
Jones Day
901 Lakeside Ave.
Cleveland, OH 44114

**Jeffrey B. Ellman, Esq.**
Jones Day
1420 Peachtree St., N.E., Ste. 800
Atlanta, GA 30309

**Robert D. Cultice, Esq.**
Wilmer Hale
60 State St.
Boston, MA 02109

**Mark T. Clouarte, Esq.**
Wheeler, Trigg, O-Donnell, LLP
1801 California St., Ste. 3600
Denver, CO 80202

/s/ Matthew D. Wells
Matthew D. Wells